820 So.2d 478 (2002)
STATE of Louisiana
v.
Kevin Duane GOODLEY.
No. 2001-K-0077.
Supreme Court of Louisiana.
June 21, 2002.
*479 Richard P. Ieyoub, Attorney General, Earl B. Taylor, District Attorney, Gary C. Tromblay, Houma, Counsel for Applicant.
Edward K. Bauman, Lake Charles, Counsel for Respondent.
JOHNSON, Justice.
The defendant was found guilty of second degree murder and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The court of appeal reversed defendant's conviction and sentence on the basis that the trial court failed to thoroughly instruct the jury as to the elements of manslaughter. State v. Goodley, 00-0846 (La.App. 3 Cir. 12/13/00), 774 So.2d 374. We granted the State's writ application in this matter to determine the correctness of the court of appeal's decision State v. Goodley, XXXX-XXXX (La.1/4/02), 805 So.2d 1199. For the reasons stated herein, we conclude that the trial court did not err in its instructions to the jury and, therefore, the court of appeal erred in reversing defendant's conviction and sentence. Accordingly, we reverse and remand this matter to the court of appeal for consideration of defendant's remaining assignments of error.

FACTS AND PROCEDURAL HISTORY
Defendant, Kevin Goodley and his cousin, Mack Tezeno, were charged, by grand jury indictment, with the second degree murder of Elta Dupre, in violation of La. R.S. 14:30.1. At defendant's trial, the state's theory was that an armed robbery had occurred, and that the defendant was guilty as a principal to the offense of second degree murder, as the homicide occurred while the defendant and Tezeno were involved in the perpetration of an armed robbery. La. R.S. 14:30.1(A)(2).[1] The defendant maintained at trial that he should not have been charged as a principal in the murder. He contended that he was merely guilty of being an accessory after the fact. La. R.S. 14:25.[2]
The State, in its case in chief, presented evidence and testimony of several witnesses to prove that the defendant was *480 indeed guilty as a principal to the charged offense.[3] The evidence presented at trial revealed that on October 21, 1998, defendant and Tezeno drove to Dupre's grocery store, which is located on a rural highway outside Opelousas, in St. Landry Parish. Tezeno entered the store and killed the 90-year-old proprietor, Elta Dupre, as he slept in a chair in the living quarters adjacent to the store, using defendant's .22-caliber rifle. According to the defendant, he went into the store, saw Mr. Dupre sleeping and left. Tezeno then took defendant's gun and entered the store. Shortly thereafter, defendant heard a gunshot, and Tezeno exited the store, giving him fourteen dollars.
Jeaneene Marie Riley, the sister of the defendant's girlfriend, testified on behalf of the State that the defendant first told her that he and Tezeno went into the store to rob it and he told Tezeno not to shoot Mr. Dupre. Defendant told Ms. Riley that he received $20 as his share of the robbery. Ms. Riley also testified that defendant then told her a second version of the crime, specifically, that he was outside in the car when he heard the gunshot, then went inside and saw Tezeno had killed a man, using his gun.
Robert Wilson, a friend of the defendant, testified that the defendant told him that he and Tezeno had robbed a store, and Tezeno had killed a man. The defendant did not mention getting any money from the robbery, but did say he had taken a case of antifreeze from the store. According to Wilson's version of the robbery, the defendant and Tezeno took the antifreeze while Mr. Dupre slept, then Tezeno went back into the store and killed Mr. Dupre while the defendant was in the car. Goodley then told Tezeno the shooting was unnecessary.
The jury retired to deliberate after hearing all testimony and evidence and after receiving its instructions from the trial court. Both counsel for the state and the defendant indicated that they were satisfied with the jury instructions given. Later, the jury sent the court a note asking for, inter alia, the definition of theft, armed and simple robbery, manslaughter, and second degree murder.[4] A review of *481 the jury instructions reveals that theft was not included in the trial court's initial instructions to the jury. The court read to the jury the requested definitions, including theft. During its reading of the manslaughter definition, the trial court named assault and battery as examples of intentional misdemeanors.
Defense counsel noted for the record his objection to the court's refusal to mention that theft is a non-enumerated felony for the purposes of the manslaughter statute. The defendant also asked that felony theft and misdemeanor theft be differentiated.[5] In his comments to the court, the defendant's counsel reasoned that "[a] theft, if they would find that a theft was committed and not an armed robbery, uh, then of course, a responsive verdict of manslaughter would be applicable."
Although it does not appear in the trial transcript, the appellate opinion reveals that the jury subsequently sent a second note asking, "Why is manslaughter an option?" State v. Goodley, 774 at 378. There is no indication that the trial court discussed the note on the record. Shortly thereafter, the jury found the defendant guilty of second degree murder.
The defendant appealed his conviction and sentence, raising three assignments of error. Defendant argued in his first assignment of error that there was insufficient evidence to sustain a conviction for second degree murder. His second assignment of error complained of the introduction of irrelevant and prejudicial evidence of other crimes.
The Third Circuit Court of Appeal found merit in defendant's third assignment of error, in which he argued that the trial court erred in failing to instruct the jury regarding the different grades of theft under the manslaughter statute. The court of appeal found that "[p]ursuant to the manslaughter statute, it was legally possible for the jury to find that Goodley was a *482 principal to a felony other than armed robbery, i.e., felony-theft, which would have mandated a conviction for manslaughter, rather than for second degree murder." Goodley, 774 So.2d at 378. Thus, while the court of appeal conceded that the trial court correctly instructed the jury with respect to the definitions of manslaughter and theft, it found the trial court committed reversible error when it failed to specifically re-instruct the jury that felony-theft is a non-enumerated felony under the manslaughter statute and as to the difference between felony and misdemeanor theft. In its reasoning, the court of appeal found that the jury was confused, evidenced by the jury's second note asking about manslaughter, and found this confusion significant in light of the trial court's denial of the defendant's requested charge. Having found merit in this third assignment of error, the court of appeal pretermitted a discussion on the other assignments of errors and reversed the conviction and sentence of the defendant.[6]

DISCUSSION
The State argues that the court of appeal erred in mandating a requested special jury charge that undermines the legislature's definition of robbery, that lacks factual support, and that belatedly discredits the defense advanced to the jury. The State contends that the law and facts of this case support the trial court's refusal to charge the jury that felony theft is a non-enumerated felony supporting a conviction for manslaughter. Defendant argues that although the State argues that the evidence does not support a lesser verdict of manslaughter, it is the jury's option to decide if it wishes to return a compromise verdict. State v. Montgomery, 98-775 (La.App. 3 Cir. 1/27/99), 734 So.2d 650. We agree with the State's contention.
La.C.Cr.P. art. 802 requires the trial court to charge the jury as to the law applicable to the case. In addition, La. C.Cr. P. art. 804 provides, in part:
B. When there are several grades of an offense contained in a single count, the court shall charge the jury as to each grade of which the defendant could be found guilty. The court shall in that case also charge the jury that if it has a reasonable doubt as to any or all grades of the offense charged it shall find the defendant not guilty of that grade, or all grades of the offense, as the case may be.
La.C.Cr.P. art. 808 further provides:
If the jury or any member thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal.
As a general matter, a trial judge has the duty to instruct jurors as to "every phase of the case supported by the evidence whether or not accepted by him as true," and that duty extends to "any theory... which a jury could reasonably infer from the evidence." La.C.Cr.P. art. 802; State v. Marse, 365 So.2d 1319, 1323 (La. 1979); cf. State v. Johnson, 438 So.2d 1091, 1097 (La.1983) (defendant not entitled to negligent homicide instruction because that "defense [not] fairly supported by the evidence" and "charge must be supported by the evidence"); State v. Henry, *483 449 So.2d 486, 488 (La.1984) ("`[D]ue process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction. The jury's discretion is thus channeled so that it may convict a defendant of any crime fairly supported by the evidence.'") (quoting Hopper v. Evans, 456 U.S. 605, 611, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982)).
With this background in mind, we must determine whether the court of appeal was correct in finding that manslaughter was a viable option for the jury and that, therefore, the trial court erred in failing to reinstruct the jury as to the elements of the manslaughter statute (specifically regarding felony theft) and as to the difference between felony and misdemeanor theft.
In arguing that the trial court erred in refusing to give the requested jury instruction, the defendant relies on the traditional authority of juries to return a compromise verdict on a lesser included responsive offense even in the face of overwhelming proof of the charged offense. State v. Porter, 93-1106, p. 4 (La.7/5/94), 639 So.2d 1137, 1140 ("Treating the jury's prerogative to return a responsive verdict similar to the jury's power of nullification, this Court has consistently held that the jury must be given the option to convict the defendant of the lesser offense, even though the evidence clearly and overwhelmingly supported a conviction of the charged offense). In the defense view, shared by the majority on the court of appeal panel, by failing to give detailed instructions as to the difference in the misdemeanor and felony grades of the offense of theft as they pertain to felony manslaughter under R.S. 14:31(A)(2)(a), the trial court deprived the defendant of his right to a statutorily-prescribed responsive verdict.
After reviewing the record, we find that the jury had no viable basis, legally or factually, to return a verdict of manslaughter. The court of appeal committed legal error in finding that the jury could have found the defendant guilty of a crime other than robbery, i.e. theft. The evidence simply does not legally support such a verdict. We agree with the State's argument that the court of appeal's opinion mandates a jury charge that strips the distinction between robbery and theft and, thereby, defies the legislature's constitutional authority to define felony-murder.[7]
The felony-murder law, La. R.S. 14:30.1(a)(2)(a), provides in part that "second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm." (Emphasis added). "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64. Proof of value in not a necessary element of robbery, as the offender's use of force or intimidation against the victim to accomplish the taking is the aspect of the crime that the legislature intends to punish.
Theft, on the other hand, presents no foreseeable danger to the victim and it is graded and, thus, punished according to the value of the taking. R.S. 14:67 defines theft as the misappropriation or taking of *484 anything of value which belongs to another, without the consent of the other to the misappropriation or the taking. In State v. Meyers, 620 So.2d 1160 (La.1993) this Court distinguished the crimes of theft and robbery. "The purpose of the force or intimidation element of robbery is to distinguish, by imposition of a more severe penalty, those takings which pose a greater risk to the victim." Meyers, 620 So.2d at 1163. Accordingly, "the force or intimidation element of robbery is satisfied by evidence that force or intimidation directly related to the taking occurred in the course of completing the crime." Meyers, 620 So.2d at 1163. It is immaterial whether the "taking of anything of value" occurs immediately before or after the "use of force or intimidation." The element of danger is present notwithstanding the order of these events.
In the present case, we first note that the defendant testified that Tezeno had committed an armed robbery, not a theft. The only issue at trial was whether the defendant was a principal to this crime, as defendant's defense was that he was guilty only as an accessory after the fact to the crime. As the state points out, the defendant offered no evidence of theft in his case in chief. While defense counsel took a slightly different tact during closing argument by denying the existence of felony murder under the theory that no force or intimidation was present in light of the fact that Mr. Dupre was asleep when he was shot in the head and was dead before any of his property was taken, the main thrust of the defense centered on the defendant's contention that he was an accessory after the fact.
Notwithstanding defense counsel's attempt to recast the crime as a theft, Louisiana jurisprudence does not distinguish between the armed robbery which occurs before the killing of the victim and the robbery of the victim whom the defendant has already killed. State v. Kirkpatrick, 443 So.2d 546 (La.1983). Thus, in the present case, it matters not whether the taking of anything from Dupre's store occurred immediately before or after Mr. Dupre was shot and killed. The act of the "taking of anything of value" cannot be separated from the killing. The homicide occurred during the taking of Mr. Dupre's property and the underlying offense for purposes of felony murder was armed robbery, not felony-theft. See State v. Nelson, 459 So.2d 510, 518 (La.1984)("[T]he victim was killed solely to prevent him from screaming his objections to Nelson's departure with his car and money.... The murder facilitated the robbery .... [and] unquestionably occurred while defendant was engaged in armed robbery."); State v. Anthony, 427 So.2d 1155, 1159 (La. 1983)("When `res gestae' has been used to determine whether the homicide was committed in the perpetration of a certain felony, it seems to have been a short way of saying that the underlying felony and the homicide form part of one continuous transaction which occurred without a significant break in the chain of events)." Thus, we find that it was not legally possible in this case for the jury to conclude that the defendant was guilty, as a principal or accessory, of felony-theft under the manslaughter statute, as the taking occurred in the course of the crime of murder. The trial court therefore had no duty under La.C.Cr.P. art. 802 to facilitate the jury's return of a lesser verdict of manslaughter based on an erroneous legal premise.
The trial court properly instructed the jury as to the law applicable to the main defense asserted at trial, i.e. principal versus accessory after the fact. It is not clear why the jury asked for the definition of theft to be included. In any event, it *485 appears that the defendant's demand for further instruction on felony and misdemeanor theft came as a complete afterthought following the jury's request. Under these circumstances, the trial court properly prevented the defendant from tailoring his defense at the last minute based on his perception of how the jury was leaning.
We also find that the evidence in this case could not factually support a conviction of manslaughter. In determining that the trial court erred in its instructions to the jury, the court of appeal found to be of importance certain evidence presented at trial pertaining to items that were taken or possibly taken from the premises when the homicide occurred. We find that the dispute about things taken or possibly taken during the course of the robbery and the value of any such items is immaterial in this case.
Although the defendant argues that the jury could have found him guilty of felonytheft, we note that during the course of the trial the defendant adamantly denied taking anything from the store. Furthermore, although the court of appeal held that "the facts arguably could have supported felony theft,"[8] this finding ignores the fact that absolutely no evidence was presented as to the value of any property taken from the victim's store. According to the defendant's testimony, Tezeno robbed the victim and took an "old pistol" and some money.[9] At any rate, no proof existed to show that any of the items allegedly taken from the store were sufficient to support the element of value for a conviction of felony theft, (i.e., theft of $100 or more). As stated, the main defense at trial was that defendant was guilty only as an accessory after the fact to the homicide committed by Tezeno. In terms of this defense theory, which called for an acquittal if jurors agreed with it, the underlying felony committed by Tezeno simply did not matter. Further, because the amount taken in an armed robbery is immaterial, neither side explored during the evidentiary portions of the trial the possible value of items taken at the time of the victim's death. Without such proof, the jury lacked a factual basis to find felony-theft as the underlying offense for a manslaughter conviction. See State v. Bourg, 470 So.2d 291, 296 (La.App. 5th Cir.1985), writ denied, 475 So.2d 354 (La. 1985)(state must prove value of the stolen property, for upon this proof depends the determination of the severity of the theft, and the punishment for a convicted offender).
Against this backdrop, we find that the trial judge properly rejected the requested charge which was unsupported by the evidence presented at trial. See La.C.Cr.P. art. 807 ("A special charge should be given by the court if it does not require qualification, limitation, or explanation and if it is wholly correct and pertinent."); see also State v. Progue, 350 So.2d 1181, 1183 (La.1977)(when a defendant makes a request for special instructions to the jury, they must be correct under the statement of facts as disclosed by the evidence).

CONCLUSION
The present case illustrates the tension between Louisiana's longstanding rule that juries may compromise their verdicts according to the responsive verdict scheme provided for a particular offense and their sworn duty to apply the law as received *486 from the court to the facts of the case in a rational manner. La.C.Cr.P. art. 790. The evidence at trial provided no basis for calculating the value of the property taken from the victim, or for determining that the underlying felony offense was theft and not armed robbery. The trial court therefore did not err in refusing to further refine its instructions to the jury, even after it defined the offense of theft as requested by the jury. Accordingly, we conclude that the court of appeal erred in reversing the defendant's conviction and sentence on the basis of faulty jury instructions.
The court of appeal's decision is hereby reversed, and this matter is remanded for consideration of the merits of defendant's remaining assignments of errors.
REVERSED and REMANDED.
NOTES
[1] La. R.S. 14:30.1(A)(2) provides:

Second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, driveby shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm. (Emphasis added).
[2] La. R.S. 14:25 provides, in part:

An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.
[3] La. R.S. 14:24 provides:

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
[4] At the time of defendant's trial, La. R.S. 14:67 provided, in pertinent part:

A. Theft is the misappropriation or taking of anything of value which belongs to another either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
B. (1)Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
(2)When the misappropriation or taking amounts to less than a value of one hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
(3) When the misappropriation or taking amounts to less than a value of one hundred dollars, the offender shall be imprisoned for not more than six months, or may be fined not more than five hundred dollars, or both. If the offender in such cases has been convicted of theft two or more times previously, upon any subsequent conviction he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than one thousand dollars, or both.
La. R.S. 14:64(A) provides:
"Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
La. R.S. 14:65(A) provides:
"Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
La. R.S. 14:31(A) provides:
"Manslaughter is:
(1) a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) when the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
[5] Under the law existing at the time of defendant's trial, if the jury finds that the amount taken amounts to a value of one hundred dollars or more, defendant would be guilty of felony theft. However, if the value amounts to less than one hundred dollars, defendant would be guilty of misdemeanor theft. La. R.S. 14:67
[6] Judge Amy dissented and would have affirmed the defendant's conviction and sentence.
[7] The legislature has the sole authority under Article III, Section I of the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct." State v. Johnson, 709 So.2d 672, 676 (La.1998)
[8] Goodley, 00-0846, p. 7, n. 2 (La.App. 3d Cir.12/13/00), 774 So.2d 374, 378.
[9] The defendant admitted receiving 14 dollars from co-defendant Tezeno; however, he did not know the total amount of money taken from the victim.